EVAN GOLDSEN SBN 257775
CARLY CHRISTOPHER SBN 278795
**Special Education Collaboration Project**
3186 Vista Way, Ste. 301
Oceanside, CA 92056
Telephone: (408) 351-0151
Fax: (415) 276-1845
eg@specialedcollaboration.net
cc@specialedcollaboration.net

Attorneys for Plaintiffs,
T.T., by and through his
General Guardians, KENNETH and MARSHA TSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| T.T., by and through his General Guardians, KENNETH and MARSHA TSE,<br><br>        Plaintiffs,<br><br>   v.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT,<br><br>        Defendant. | Case No.<br><br>COMPLAINT FOR:<br><br>1.  Appeal Portions of California Office of Administrative Hearings Decision [20 U.S.C. § 1415, et seq.];<br><br>2.  For Attorneys Fees as Prevailing Party under 20 U.S.C. § 1415(i)(3); and<br><br>3.  For Violations of Section 504 and the Americans with Disabilities Act of 1990 |

NOW COMES Plaintiff T.T. ("T.T." or "Student"), a disabled minor, by and through his parents and General Guardians, Marsha Tse and Kenneth Tse (collectively, "Parents"), for a complaint against Defendant SAN FRANCISCO UNIFIED SCHOOL DISTRICT ("Defendant," "District," or "SFUSD"), and alleges the following:

**PRELIMINARY STATEMENT**

1.      This action is brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §

**T.T. v. San Francisco Unified School District**

1

794(a); and Section 504's implementing regulations (29 U.S.C. § 794(a); 34 C.F.R. Parts 104-106).

2.    Plaintiff, T.T., has been aggrieved by a final order rendered by an administrative law judge ("ALJ") from the California Office of Administrative Hearings ("OAH") on February 11, 2026. This action is brought, in part, pursuant to Section 1415(i)(2)(A) of Title 20 of the United States Code. (20 U.S.C. § 1415(i)(2)(A); see generally 20 U.S.C. §§ 1400 et seq.)

**JURISDICTION, VENUE, AND EXHAUSTION**

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3).

4.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff and Defendant SFUSD are located within this district and the claims arose within this district.

5.    A due process hearing has been held by OAH pursuant to the IDEA; the Decision ("OAH Decision") in that case – OAH Case No. 2025080736 – was issued by OAH on February 11, 2026. A true and correct copy is attached hereto as Exhibit "A." This action timely follows within 90 days of the OAH Decision.

6.    Plaintiff has exhausted all remedies available to him under the IDEA as required by 20 U.S.C. § 1415(i)(2) by issuance of the OAH Decision.

**PARTIES**

7.    T.T. is a citizen of the United States, who at the time of the violations alleged herein, resided with his parents in San Francisco, California, which is located within San Francisco County and the boundaries of the San Francisco Unified School District. At all times relevant herein, T.T. was, and continues to be, a minor, having been born on April 29, 2010. Student is a qualified handicapped person entitled to the legal rights and remedies set forth in the IDEA, 20 U.S.C. § 1400 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,

*T.T. v. San Francisco Unified School District*

and Title II of the ADA, 42 U.S.C. § 12132. T.T. has been found eligible for special education and related services under the primary qualifying criteria of autism with a secondary qualifying criteria of intellectual disability. Independent educational evaluator Mickell Lethco, Psy.D., has additionally diagnosed T.T. with autism spectrum disorder (Level 2), intellectual disability, attention-deficit/hyperactivity disorder, oppositional defiant disorder, and features consistent with pathological demand avoidance. T.T. has significant needs in speech and language, behavior, functional communication, peer relationships, adaptive functioning, social skills, sensory processing, and academics. T.T. requires one-to-one highly trained behavioral support throughout the entire school day for his, and others, safety.

8.      Marsha Tse and Kenneth Tse are Student's mother and father, and are citizens of the United States, who, at the time of the violations alleged herein, resided within San Francisco, California, which is within San Francisco County and the boundaries of the District.

9.      Defendant SFUSD is a public school district organized and existing under the laws of the State of California and is located within San Francisco County. At all times relevant herein, SFUSD was the local education agency responsible for providing Student with full and equal access to the public education programs and activities it offers in compliance with the requirements of state and federal law, and for providing Student, who is eligible for special education, with a "free appropriate public education" ("FAPE") under the IDEA, the California Education Code, and Section 504, for which SFUSD receives federal financial assistance.

**PROCEDURAL HISTORY**

10.      On or about August 12, 2025, on behalf of Plaintiff, Evan Goldsen, Esq. and Carly Christopher, Esq. of Special Education Collaboration Project, filed a request for due process hearing and mediation ("Due Process Hearing") with OAH.

11.      On or about August 27, 2025, OAH granted a joint request for mediation and due

**T.T. v. San Francisco Unified School District**

process continuance in the matter of Parents on Behalf of Student v. San Francisco Unified School District, OAH Case No. 2025080736.

12.　On or about September 4, 2025, on behalf of SFUSD, Erin Frazor, Esq. of Lozano Smith filed a response to the due process complaint.

13.　The Due Process Hearing for OAH Case No. 2025080736 was held via videoconference before Administrative Law Judge ("ALJ") Tiffany Gilmartin on December 2, 3, 4, 15, 16, 17, 18, and 19, 2025 (the "OAH Hearing"). At the parties' request, OAH continued the matter for written closing briefs, which were submitted on January 12, 2026, when the record was closed and the matter was deemed submitted.

14.　On or about February 11, 2026, OAH issued its OAH Decision, which was served via electronic mail.

15.　The OAH Decision identifies four separate issues, all related to whether SFUSD denied Student a FAPE during the 2024-2025 school year by failing to: (1A) provide Parents timely and accurate information about Student's behavior incidents at school; (1B) provide Parents timely and accurate information about the amount of time Student was placed in a quiet room adjacent to the special day class and excluded from his peers and a credentialed teacher; (1C) meaningfully consider the recommendations by independent educational evaluator Dr. Mickell Lethco at IEP team meetings held on April 10, 28, and May 5, 2025; and (1D) offer an appropriate placement reasonably calculated to provide him a FAPE at the April 10, 28, and May 5, 2025, IEP team meetings.

16.　The OAH Decision held that SFUSD prevailed on Issues 1A, 1B, and 1C; that Student partially prevailed on Issue 1D as it relates to the April 10 and April 28, 2025, IEP team meetings; and that SFUSD partially prevailed on Issue 1D as it relates to the May 5, 2025, IEP team meeting. As an equitable remedy, the OAH Decision ordered SFUSD to fund 30 hours of

**T.T. v. San Francisco Unified School District**

4

Board Certified Behavior Analyst ("BCBA") services from a provider of Parents' choice at a rate not to exceed $250 per hour, with those compensatory services available to Student until December 31, 2028. All of Student's other requests for relief were denied.

**FACTUAL BACKGROUND**

17. T.T. is a 15-year-old boy who, at the time of the OAH Hearing, was in the ninth grade and attended Phillip and Sala Burton High School. T.T. is special education eligible in the primary category of autism and the secondary category of intellectual disability. T.T. has significant needs in speech and language, behavior, functional communication, peer relationships, sensory processing, adaptive functioning, social skills, and academics. He requires one-to-one highly trained behavioral support throughout the entire school day for his safety.

18. T.T.'s placement during the 2023-2024 and 2024-2025 school years was a mild-to-moderate autism focused special day class at Marina Middle School. Beginning in seventh grade, during the 2023-2024 school year, T.T. grew increasingly resistant to leaving his home and engaging in activities in the community. Parents worked closely with T.T.'s treating pediatric neurologist, Elysa Marco, M.D., to better understand T.T.'s pulling away from the community and engaging in unpredictable and unsafe behavior at an increasing rate. Medication prescribed by Dr. Marco had not been effective.

19. On October 31, 2023, T.T. became dysregulated at school, threw a chair at a teacher, slapped his teacher in the face, smashed a glass mug, kicked a teacher in the chest, and pulled his pants down to urinate in the principal's office. For the first time, staff placed T.T. in a physical escort, a behavior emergency intervention, in response to his unsafe behaviors. T.T. was suspended for one day.

20. On November 1, 2023, Mrs. Tse informed Marissa Ellison, T.T.'s special day class teacher, that T.T. had punched Mr. Tse while Mr. Tse drove T.T. home from school,

**T.T. v. San Francisco Unified School District**

creating an extremely unsafe situation. Mrs. Tse further informed Mrs. Ellison that T.T. had become increasingly dysregulated, destructive, volatile, and violent at home and in the community since the summer of 2023. T.T. would exhibit unsafe behaviors four to five days per week, with moments of escalation lasting four to five hours. Mrs. Tse described several instances in which T.T. became dysregulated in the community, including an incident at an airport where T.T. rushed through Transportation Security Administration screening and rampaged through a restaurant.

21.     Beginning in October 2024, while in the eighth grade, T.T. began demonstrating self-injurious behaviors, including hitting his head against hard objects and biting his hands. The first documented occurrence of self-injurious behavior occurred on October 17, 2024, when Student attempted to elope, was redirected, threw himself on the ground, and slammed his head into the floor multiple times before staff could intervene.

22.     On October 31, 2024, T.T. threw a broom at the bus driver, hit another student in the face, and ripped a tablet from its charger. On the same date, Parents requested placement in a residential treatment center, citing T.T.'s escalating behaviors and increasing isolation.

23.     Throughout the 2024-2025 school year, T.T. spent the majority of his school day outside of his special day classroom in a sensory and quiet room adjacent to his assigned classroom. T.T. was accompanied only by his one-to-one paraprofessional and excluded from his peers and a credentialed teacher. Parents were not informed of this until November 6, 2024, at an IEP amendment meeting at which Caroline Baum, BCBA, and Mrs. Ellison estimated T.T. spent approximately 70 percent of the instructional day in the quiet room. Parents had no knowledge of T.T.'s sixth and seventh grade time spent out of an instructional classroom prior to that date.

24.     Multiple serious behavior incidents during the 2024-2025 school year were not disclosed to Parents until SFUSD produced documents in response to a subpoena duces tecum

**T.T. v. San Francisco Unified School District**

issued in this matter. These included: (a) an October 2, 2024, incident in which T.T. became dysregulated, was escorted into the quiet room, threw a computer on the ground, eloped, and was again escorted back to the quiet room; (b) a December 13, 2024, incident in which T.T. became dysregulated during sixth period, threw his computer to the ground four times, threw a classmate's computer striking a staff member in the head, slammed his head against the wall of the quiet room three to five times, was placed in a two-person hold, and remained escalated for approximately 25 minutes; (c) a January 14, 2025, incident in which T.T. eloped from the special day classroom, threw Legos, intentionally hit his head on the swing and windowsill three to four times, aggressively bit his fingers, was restrained by two paraprofessionals, was physically guided into the quiet room, and was confined in the quiet room with the door closed until he de-escalated; and (d) a May 13, 2025, incident in which T.T. engaged in self-injurious behavior including finger biting and head banging, and was subjected to multiple physical restraints by SFUSD staff.

25.     At the OAH Hearing, Mrs. Ellison testified that T.T. was never placed in the quiet room with the door closed. Contemporaneous documentation of the January 14, 2025, incident produced in response to subpoena, and the testimony of Kayla Twite, T.T.'s occupational therapist, established that T.T. was in fact confined in the quiet room with the door closed for extended periods. Ms. Twite testified to observing T.T. in the quiet room with the door closed in January or February 2025, with paraprofessionals remaining outside in the sensory room.

26.     During the 2024-2025 school year, T.T.'s behaviors at home and in the community escalated dramatically, including increased isolation, outwardly volatile behavior toward Parents and the family pet, refusal to engage in previously enjoyed activities, destruction of furniture, urinating on furniture, animosity toward the family dog including attempts to physically strike the animal, and frequent elopement from the home into busy streets.

**T.T. v. San Francisco Unified School District**

27.    Independent educational evaluator Mickell Lethco, Psy.D., conducted a comprehensive psychoeducational evaluation of T.T. in late 2024 and early 2025, with her final report issued on February 24, 2025. Dr. Lethco diagnosed T.T. with autism spectrum disorder (Level 2), intellectual disability, attention-deficit/hyperactivity disorder, oppositional defiant disorder, and features consistent with pathological demand avoidance. Dr. Lethco's evaluation included extensive records review and interviews with Mrs. Ellison; Xiao Tina Wang, T.T.'s school psychologist; Kayla Twite, T.T.'s occupational therapist; Lauren DeSantis, T.T.'s speech-language pathologist; Caroline Baum, the board certified behavior analyst; and Dr. Marco, T.T.'s treating neurologist. Behavioral rating scales completed by Parents and Mrs. Ellison reflected clinically significant impairments globally, including severe externalizing behaviors, elevated internalizing symptoms, clinically significant withdrawal, atypicality, and attention problems, and impaired anger control and emotional self-regulation. Dr. Lethco concluded that T.T. requires placement in a residential program offering 24/7, individualized support to address T.T.'s complex behavioral, emotional, sensory, and adaptive needs and to ensure continuity of care across settings.

28.    Dr. Marco, T.T.'s treating pediatric neurologist, also recommended placement in a residential treatment center. Dr. Marco testified that T.T. required a more structured, unified home-and-school environment and that the wrap-around nature of a residential treatment center would stabilize T.T. Dr. Marco testified there is no public school curriculum that would meet T.T.'s needs.

29.    T.T.'s triennial and annual IEP meetings were held over the course of three IEP meetings on April 10, April 28, and May 5, 2025. Dr. Lethco participated in all three IEP meetings. At the April 10 and April 28, 2025, IEP team meetings, SFUSD made no new placement offer. At the May 5, 2025, IEP team meeting, SFUSD offered placement in an

extensive support needs cross-categorical classroom on a comprehensive high school campus. Parents requested at each of these meetings that T.T. be placed in a residential program consistent with Dr. Lethco's recommendation. SFUSD summarily rejected the request.

30.     On April 28, 2025, the District reported that T.T. remained in his classroom for only 40 percent of the designated time in class.

31.     On May 7, 2025, T.T. aggressively bit his hands and was restrained on multiple occasions, including in a seated restraint in a chair. T.T. sustained injuries to his hands as a result.

32.     Parents consented to the May 5, 2025, IEP on August 11, 2025, with an addendum stating, in pertinent part, that they did not believe the IEP afforded T.T. a FAPE and that they continued to believe that T.T. required residential placement.

33.     Following T.T.'s placement at Burton High School in the 2025-2026 school year, T.T. continued to engage in significant maladaptive behaviors. Across the first five weeks of data collection at Burton, T.T. engaged in hitting an average of 4.4 times per week, throwing an average of 2.8 times per week (with up to 12 instances per day), self-injurious behavior including head banging and biting an average of 2.6 times per week (with up to 13 instances per day), and elopement an average of 3.4 times per week.

## FIRST CLAIM FOR RELIEF

### (APPEAL OF CERTAIN FINDINGS OF FACT AND CONCLUSIONS OF LAW SET FORTH IN THE OAH DECISION)

34.     Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-33, inclusive, of this complaint.

35.     Plaintiff is a "party aggrieved" by the OAH Decision, as that term is used in 20 U.S.C. § 1415(i)(2)(A) and California Education Code section 56505, subdivision (k), in that the OAH Decision erred in holding in favor of SFUSD with respect to Issue 1A (SFUSD's failure to provide Parents timely and accurate information about Student's behavior incidents at school);

**T.T. v. San Francisco Unified School District**

Issue 1B (SFUSD's failure to provide Parents timely and accurate information about the amount of time Student was placed in a quiet room adjacent to the special day class and excluded from his peers and a credentialed teacher); Issue 1C (SFUSD's failure to meaningfully consider the recommendations by independent educational evaluator Dr. Mickell Lethco at the IEP team meetings held on April 10, 28, and May 5, 2025) and Issue 1D in part (SFUSD's failure to offer an appropriate placement reasonably calculated to provide T.T. a FAPE at the May 5, 2025, IEP team meeting).

36.    Furthermore, the ALJ erred by limiting the remedies ordered as a result of the District's failure to offer Student a FAPE at his April 10 and 28, 2025, IEP meetings. In the OAH Decision, the ALJ determined that Student was only denied a FAPE from April 10, 2025, through May 21, 2025, because had Student consented to the May 10, 2025, IEP prior to May 21, 2025, the District would have implemented an IEP that was determined to be appropriate to his unique needs. However, the testimony at the Due Process Hearing made clear that the District's offer of an Extensive Support Needs (ESN) class was for the 2025-2026 school year, which did not begin until August of 2025. This error led the ALJ to order less remedies for Student than he was entitled to as a result of his partial success on Issue 1D. Student does not appeal the OAH Decision with respect to the ALJ's finding that Student was denied a FAPE at his April 10 and 28, 2025, IEP meetings; he appeals the OAH Decision with respect to the remedies ordered as a result of Student's partial success on Issue 1D.

37.    Based on the allegations above, Plaintiff requests that this Court receive the records of the administrative proceedings below, hear additional evidence that Plaintiff may submit, allow Plaintiff to object to any evidence that Defendant may seek to add, and issue an order based upon the preponderance of the evidence in order to grant such relief as the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**

**(AGAINST SFUSD FOR RECOVERY OF REASONABLE ATTORNEYS' FEES UNDER 20 U.S.C. § 1415(i)(3)(B))**

38.    Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-37, inclusive, of this complaint.

39.    As a partially prevailing party in the proceeding before OAH, having obtained a finding that SFUSD denied Student a FAPE at the April 10 and April 28, 2025, IEP team meetings, and an award of compensatory BCBA services, Plaintiff is entitled to reimbursement of reasonable attorneys' fees incurred during the course of those administrative proceedings under 20 U.S.C. § 1415(i)(3)(B), as well as for attorneys' fees incurred in seeking those fees as part of this complaint.

40.    Plaintiff is further entitled to recovery of reasonable attorneys' fees and costs incurred in connection with the prosecution of this federal action to the extent Plaintiff prevails on any claim or obtains relief that materially alters the legal relationship of the parties.

**THIRD CLAIM FOR RELIEF**

**(29 U.S.C. § 794 – Violation of Section 504 of the Rehabilitation Act)**

41.    Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-40, inclusive, of this complaint.

42.    Section 504 prohibits the denial to a person with a disability of participation in or the benefits of a program or activity that receives Federal financial assistance. 29 U.S.C. § 794(a). Section 504 applies to all school districts that receive federal assistance.

43.    Section 504 requires school districts to provide a free appropriate public education to students with disabilities "regardless of the nature or severity of the person's handicap." 34 C.F.R. §§ 104.33(a), 104.34(a).

44.    The requirements for providing an appropriate education under Section 504 state

that an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met, and (ii) are based upon adherence to procedures that satisfy the requirements of 34 C.F.R. §§ 104.34, 104.35, and 104.36. 34 C.F.R. § 104.33(b)(1).

45.    Section 504 regulations prohibit provision of "different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others." 34 C.F.R. § 104.4(b)(1)(iv).

46.    Section 504 regulations further prohibit school districts from utilizing "criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons, or (iii) that perpetuate the discrimination of another [Rehabilitation Act] recipient if both recipients are subject to common administrative control or are agencies of the same State." 34 C.F.R. § 104.4(b)(4).

47.    Plaintiff is informed and believes, and on that basis alleges, that SFUSD was, at all relevant times, a recipient of federal funds, and that part of those funds were used in the operations, construction, and/or maintenance of the specific public facilities and programs described herein and the activities that take place therein. SFUSD was obligated by law to provide T.T. with the same services and opportunities it provided to other students so that he could meaningfully access an education.

48.    T.T.'s autism, intellectual disability, and other disabilities substantially limit one or more of his major life activities, including but not limited to learning, communicating, social

interaction, concentrating, and caring for himself. T.T. is therefore a qualified individual with a disability as defined by 34 C.F.R. § 104.3(j).

49.    SFUSD failed to offer and provide T.T. with an appropriate placement and adequate, integrated supports designed to meet his individual educational needs as adequately as the needs of non-disabled students were met. Despite clear evidence that T.T.'s mild-to-moderate autism focused special day class placement was not meeting his needs, rather than offer an IEP that was reasonably calculated to enable T.T. to make progress in light of his circumstances, SFUSD excluded T.T. from his classroom, credentialed teacher and peers, and placed him in a separate sensory and quiet room adjacent to his classroom. SFUSD failed to offer an appropriate placement at the April 10, April 28, and May 5, 2025, IEP team meetings, and thereafter offered only an extensive support needs classroom on a comprehensive campus that did not address T.T.'s integrated home, school, and community needs.

50.    By failing to meaningfully consider the recommendations of T.T.'s independent educational evaluator and treating neurologist for placement in a residential treatment center, by relying on stereotyped assumptions about residential placements rather than evidence-based analysis of T.T.'s individual needs, by failing to disclose to Parents the full extent of restraints, confinement in the closed quiet room, and serious behavior incidents at school, and by knowingly failing to offer a placement designed to provide T.T. with the same opportunity to benefit from his education as non-disabled students, SFUSD knew that it was substantially likely that T.T. would be harmed with respect to his federally protected right to a free appropriate public education, but failed to act on that likelihood.

51.    T.T. is entitled to equal opportunity to meaningfully access an education, an opportunity equally provided to students who do not have disabilities. For T.T. to meaningfully access an education, he requires a placement that addresses his integrated educational,

behavioral, social, and adaptive needs, including the consistent, structured, 24-hour environment that only a residential treatment placement can provide.

52.    SFUSD violated Section 504 by failing to offer and provide T.T. with an appropriate placement and related services designed to meet his individual educational needs as adequately as the needs of non-disabled students are met, thereby denying him meaningful access to education. SFUSD also violated Section 504 during the 2023-2024 and 2024-2025 school years by removing T.T. from his mild/moderate Special Day Class (SDC), without parental consent, and placing him in a room adjacent to his classroom, excluding him from access to peers and a credentialed teacher.

53.    As a result of the District's violation of Student's rights under Section 504, Student suffered injury including, but not limited to, educational injury, regression in adaptive and social functioning, increased isolation, increased self-injurious behavior, physical injury including injuries to his hands as a result of repeated restraints, and hedonic injury in that Student was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age.

### FOURTH CLAIM FOR RELIEF

**(42 U.S.C. § 12132 – Violation of Title II of the Americans with Disabilities Act of 1990)**

54.    Plaintiff realleges and incorporates by reference as though fully set forth herein, paragraphs 1-53, inclusive, of this complaint.

55.    Pursuant to 42 U.S.C. § 12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. Title II of the ADA applies to all the activities of public entities, including school districts that provide public education.

56.     The requirements regarding the provision of a FAPE, specifically described in Section 504 regulations, are incorporated in the general non-discrimination provisions of the applicable ADA regulations. 28 C.F.R. § 35.103(a).

57.     Title II of the ADA regulations state that a public agency providing any aid, benefit, or service may not directly or through contractual, licensing, or other arrangements, on the basis of disability: (i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; (iv) provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others; (v) aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program; or (vi) otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service. 28 C.F.R. § 35.130(b)(1).

58.     As with Section 504, the ADA regulations further prohibit school districts from "directly or through contractual or other arrangements, utiliz[ing] criteria or methods of administration (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; (ii) that have the purpose or effect of defeating or

substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities; or (iii) that perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State." 28 C.F.R. § 35.130(b)(3).

59.     T.T. was at all relevant times a qualified individual with a disability, as defined herein.

60.     At all relevant times, T.T. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. SFUSD is a "public entity" as defined by 42 U.S.C. § 12131 and is subject to Title II. At all times relevant to this complaint, SFUSD oversaw and provided education through programs and activities, including special education services to students with exceptional needs. SFUSD was obligated by law to provide T.T. with the same educational opportunities that it provided to non-disabled students.

61.     Notwithstanding T.T.'s disability, T.T. believes and alleges that SFUSD subjected him to discrimination on the basis of his disability during the 2023-2024 and 2024-2025 school years, including by failing to offer and provide an appropriate placement and integrated supports reasonably calculated to enable T.T. to receive a meaningful educational benefit, by repeatedly excluding T.T. from his peers and a credentialed teacher in a room adjacent to his classroom, and by failing to disclose serious behavior incidents and the use of restraints to Parents.

62.     Pursuant to 42 U.S.C. § 12133, T.T. is entitled to injunctive relief requiring SFUSD to offer and provide an appropriate placement and integrated supports consistent with the recommendations of his independent educational evaluator and treating neurologist, recovery of general and special damages to be proven at trial, and reasonable attorneys' fees and costs incurred in bringing this action.

63.     There was no federal or state guidance that prevented SFUSD from providing T.T.

with the placement and related services he requires in order to access an education.

64. As a result of the District's violation of Student's rights under the ADA, Student suffered injury including, but not limited to, educational injury, regression in adaptive and social functioning, increased isolation, increased self-injurious behavior, physical injury including injuries to his hands as a result of repeated restraints, and hedonic injury in that Student was deprived of the opportunity to engage in school activities and the opportunity to enjoy the society of other children of his age.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment as follows:

**On Plaintiff's First Claim for Relief:**

1. That the order of ALJ Gilmartin be reversed in Plaintiff's favor in relation to Issue 1A, 1B, 1C and Issue 1D as it relates to the May 5, 2025, IEP team meeting;

2. That the Court modify the compensatory education remedy awarded in the OAH Decision for Student's partial success on Issue 1D consistent with the evidence;

3. Declare that Plaintiff is the "prevailing party" as to Issues 1A, 1B, 1C and 1D in their entirety;

4. That the Court grant Plaintiff's request for the opportunity to submit additional evidence permitted by the IDEA;

5. Order SFUSD to amend Plaintiff's IEP to include placement in an appropriate residential treatment center consistent with the recommendations of Dr. Mickell Lethco and Dr. Elysa Marco;

6. Award compensatory education to Plaintiff under the IDEA according to proof;

**On Plaintiff's Second Claim for Relief:**

7. Award reimbursement of reasonable attorneys' fees and costs incurred by Parents in

**T.T. v. San Francisco Unified School District**

17

connection with the proceedings before OAH pursuant to 20 U.S.C. § 1415(i)(3)(B);

**On Plaintiff's Third and Fourth Claims for Relief:**

8. Order SFUSD to amend Plaintiff's IEP to include placement in an appropriate residential treatment center consistent with the recommendations of Dr. Mickell Lethco and Dr. Elysa Marco;

9. General damages as relevant according to proof;

10. Special damages as relevant according to proof;

11. Equitable damages as relevant according to proof;

**On All Claims for Relief:**

12. Award reasonable attorneys' fees and costs incurred by Parents in connection with the current proceeding;

13. Prejudgment interest as relevant according to proof;

14. For such additional relief as the Court determines is appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands trial by jury on all his legal claims except IDEA claims pursuant to Federal Rules of Civil Procedure 38(b).

DATED: May 12, 2026                              **Special Education Collaboration Project**

                                        /s/ *Evan Goldsen*

                                                  Evan Goldsen
                                                 Carly Christopher
                                             Attorneys for Plaintiffs